May it please the court, my name is Robert Powell. I'm here on behalf of the plaintiffs, Lori and Kobe Beltran. I believe what we have presented to you here in this case is a circumstance not unlike what is discussed in Gates and Nathanson, where first and foremost you have an application for a warrant full of nothing but cursory, conclusory language, followed by a petition which is sworn out on information and belief. Two things which by themselves, under the law, render it invalid on its face. But affidavits frequently rely on hearsay, do they not? Well, if they rely on hearsay, there's still the requirements of reliability and veracity to be established in the application or the allegations included in the petition, and those are completely ignored here. And much of the hearsay... Well, you say completely ignored, but I mean you've got a month-long investigation. We now have the detailed investigation records from the social worker. We have multiple sources of information in the treating physicians which tend to corroborate one another. What more do you think the affidavit required in order to support the district court's determination that even without the challenge statements, there still is probable cause in this affidavit? Because the affidavit on its face does not comply with the requirements of Illinois v. Gates, citing Nathanson, which is you cannot swear it out on just information and belief. You cannot do that. And we don't have just hearsay here in allegations 1, 3, 4, 8, and 12. We have multiple levels of hearsay. We have leaving out the fact about the prior referrals leaves out the fact that Dr. Abramson... Maybe you and I are talking past one another, but it seems to me that if a magistrate is reviewing an application for probable cause, it is certainly going to be based on information that is from other people. And the question is can the magistrate look at the affidavit and based on the allegations or information contained from the identified sources, can the magistrate conclude that there is a reasonable likelihood that a crime has been committed here and probable cause to support the removal of the child from the home? The fact that it's based on hearsay statements I don't think is disabling, is it? I think it is when it's double and triple hearsay and there is no affirmative allegation of the reliability or veracity of the informants. But you're ignoring the fact that the sources of information are corroborating one another. That's where the reliability determination is made. No, the reliability as far as I understand it under the law, Your Honor, comes to the person who's providing the allegation. And in this case, what's done throughout is leaving out the information. So when you talk about these doctors corroborating each other, one of them, Abramson, hadn't seen the child for 10 months. Everything he had was old and stale. And he was also the reporter on the four prior referrals that they did not bother to tell the court about because it's our position that the inference when you do not tell the court that there's been three, four, depending how you look at it, prior referrals, all deemed unfounded. That is the lowest disposition that any referral for child abuse can be in the state of California. And you don't tell the court that. You have deceived the court. And what do you do about Dr. Frank's report? That's the current report. Well, her report starts very detailed. They call the social worker and she has very serious problems and concerns. What would you expect the social worker to do in what she has proceeded then to investigate with that report? Your complaint about the other doctor's report is stale. It's a few months old. Dr. Frank's was not stale. By the way, I'd like to reserve three minutes. Dr. Frank forgot to do that. That's all right. Your Honor, Dr. Frank's, if you read, even start with the screener narrative, she says this child is stable. Her concerns state if. When people are dead, they're stable. When people die, they're stable also. She's saying the child is stable. That doesn't mean the child is thriving. The child might be starving to death and be stably starving. Although actually the evidence was the child was thriving. I'm not talking about what you say the actual evidence was ultimately. The thing is, Suarez did do a lot of investigation. By the way, she did not swear on information and belief. Right. She swore out a conclusory statement from the statutory language. She didn't swear on information and belief. She incorporated all the allegations that were in the petition, which was sworn to on information and belief. I'll agree. She incorporated that in her affidavit and swore to it. Your Honor, she swore out a lot of allegations, but she swore to the allegations in the in the petition. Is that not true? Yes, she says it's attached. She did. She swore. She swore. She incorporated and said it was accurate. Now, so to say that the only thing before the judge was teased, I can't think of how to pronounce it right now, was teased information and belief affidavit isn't exactly right, is it? No, it isn't. But the application that Suarez swore out was nothing but conclusory language from the statute. And back to Dr. Franks, back to answering. Are you saying that everything in the petition is only conclusory language from the statute? No, in what Suarez signed out. Suarez swore that she incorporated the petition and swore to the accuracy. No, that she did not do. She said she incorporated the petition indeed. Yes. But then said, sworn to under penalty of perjury to her allegations, which were the conclusory language from the statute. One of her allegations is precisely that. It's that the child's in danger, however they put it, and then she incorporates what's in the petition into her affidavit. I think when lawyers at least incorporate things by reference, we think that those are being sworn to. Is that not right? If a lawyer says, I incorporate document A and I swear that everything in my declaration is true, we just say we're only swearing to the declaration, not swearing to the truth. Let's agree that Suarez swears in the petition language and accepts it as her own. Well, that's appropriate because we find out later, though the judge wouldn't know it at the time, that she is the social worker mentioned in the allegations on most of them. There's also a social worker from a referral over a year prior whose information is included, half of it. And she does, she adopts all of those things. But we have laid out for this court the plethora of information that is left out deceitfully. And the courts have been very clear in Liston, Standard, Gates. You got to tell the whole story and they don't come close. And when you do not act in an speaking to the mother about what the doctor said, it's not objectively reasonable. And may I offer three quotes from Ms. Suarez herself that I think define this unreasonableness. She says, it is not my practice to say to a parent, this person is saying this about you. What's your perspective on that? In other words, it's not my practice to go investigate and find out, what's the other side of the story? Number two, I didn't see the point of asking mom why she tells different stories to different doctors. Same problem. And lastly, she says, this petition is a list of concerns, but it's not under Fourth Amendment jurisprudence. It is supposed to be the total story. You are supposed to include those things that are contradictory. You are essentially arguing that there is an obligation which does not even exist in federal grand jury proceedings to introduce exculpatory evidence in an affidavit of probable cause to obtain a warrant. What case do you have that supports your position? I wouldn't agree that that's exactly what I'm saying, Your Honor. I'm referring more to the- That's what I just heard you say. I'm referring to the language straight out of Liston, which talks about telling the total story. And I cannot agree under any scenario that this was a telling- That's not my question. You're arguing to us that there is an obligation on the part of the social worker to tell every piece of information, including exculpatory information. And my question for you is, is Liston your best case? And where in Liston do I find that language? The total story language in Liston is cited throughout the brief. Well, total story is not the same as exculpatory, is it? Well, I believe it is. If it's just a list of concerns, you'll get your probable cause granted every time. If you only tell half the story, you don't tell the things like the prior referrals. You don't tell the things like the child has been gaining weight. You don't tell the story that in your own files, it says this is a cooperative mother. All of the prior concerns have been addressed. This is a child with multiple medical issues. All you do is say they saw multiple doctors. That's what people with multiple medical issues do. Doesn't Liston really talk about telling the whole story means that you have to watch for the, make sure that the material omissions, if they're there, they would cause the express statements in the warrant then to be misleading, not that you have an obligation to put all exculpatory evidence in. Not just misleading, but in the Garza court, it's pointed out that omitted material so much as casts doubt on the existence of probable cause. And I must admit, I believe that that is one of the errors that the district court made in reviewing this court, in this case was they treated it as if every material omission had to, if included, just completely negate probable cause. That's not the case. And the law is very clear on that. Counselor, aren't you missing one of the requirements of a defeating qualified immunity, even in Liston. And I'm looking at page, looks like 965. At any rate, the court said that the plaintiff must do two things. One, make a substantial showing of deliberate falsehood or reckless disregard for the truth. And two, establish that but for the dishonesty, the challenged action would not have occurred. We have an express factual finding by the district court that you didn't meet that standard to show deliberate, no substantial showing that those social workers deliberately misled the court or acted with reckless disregard for the truth. That's at page 5 of the district court's order. Isn't that what this case turns on? You fail to establish a prima facie case in order to I do not believe that we did. We showed that every single allegation, every single allegation is affected by material omissions and misrepresentations. That is a substantial showing. It does not require that we negate probable cause entirely. We would have to find on appeal that that factual finding was clearly erroneous, would we not? That's my understanding. You're on de novo review of this just as the district court should have been. You're on de fact, not a conclusion of law. So that's subject to the clear error standard, isn't it? If so, this amounts to clear error given the plethora of false and incorrect submissions that we've shown you in the allegations affecting every single one. I think we have your argument if you want to save any rebuttal. I do want to save my two minutes and 30 seconds. All right, let's hear from the county. Good morning. May it please the court. My name is Melissa Kenioklis. I'm from the Santa Clara County Council's office and I represent the social workers, Melissa Suarez and Emily Chin. The parties appear to agree that on the correct standard, which is the Frank's analysis, in which the plaintiffs who are challenging the warrant application here have to make a substantial showing of deliberate falsehood or reckless disregard for the truth. And if they make that showing, establish that but for the dishonesty, the warrant would not have issued. The district court here correctly found that the plaintiffs had not, as your honor pointed out, made a substantial showing of deliberate falsehood or reckless disregard for the truth. Now, the fact that the warrant petition referred to information that was constituted hearsay is of no consequence. The social worker who investigated this spoke with three doctors, one the child's pediatrician and two specialists, two gastroenterologists who had treated him, who all expressed concern that this child was at risk because of his mother's conduct in representing his medical symptoms in order to have additional unnecessary medical procedures performed on this four-year-old child. And my opponent points out that this was not the first time that this family was referred to the Department of Family and Children's Services and that those prior referrals were closed as unfounded. But I'd like to point out to the court that unfounded does not mean exonerated. It is a term of art defined in the welfare and I'm sorry, the penal code. And it basically means that there was no evidence of child abuse or neglect at that time and that if the findings had been anything other than unfounded, this family would have been reported into the Department of Justice Child Abuse Central Index System. So the social workers in the prior referrals, which came from Kaiser medical professionals and a family member, investigated this family and had concerns about the mother but never had definitive proof that the mother was causing this child to be ill or subjecting him to unnecessary procedures. However, the family was told that if there were any other additional concerns by Kaiser medical staff that the family would be reported to the Department of Family and Children's Services again. This recent referral that's at issue in this case, the circumstances had changed. For the first time, the Department of Family and Children's Services had a doctor who had concerns about the mother's behavior putting the child at risk and additional concerns that the father's passivity was not protective of the child because the father didn't intervene to prevent the unnecessary procedures and tests and additional doctors doing additional procedures. And Dr. Franks was the primary care treating pediatrician, is that correct? That's correct. What is the effect of the later dismissal of the case after the juvenile procedure? Well, Your Honor, the later dismissal of the case occurred a month after the removal. So it occurred after the trial. It occurred after the DFCS had presented its complete case. I'd like to point out that at the initial detention hearing in this matter, so the child was removed on a warrant. A couple days later, there's an initial detention hearing. And at that initial detention hearing, the parents brought a motion to quash the protective custody warrant, alleging the exact same things that they're pointing out here, challenging the warrant and accusing the department social workers of including misrepresentations and leaving out key information. And nevertheless, the juvenile dependency judge, after hearing arguments from everyone, ordered the child detained. So found at that stage of the proceedings that a prima facie showing had been made that the child was at risk of abuse or neglect. And the juvenile court was well aware of the parents' disagreement with the department's case, of the parents' disagreement with the doctor's conclusions about the mother's behavior. The judge, nevertheless, ordered the child detained at the shelter and set the matter for a jurisdictional trial. And it was not until the complete conclusion of the jurisdictional trial, I take that back, the Department of Family and Children's Services' complete case that the juvenile court judge ordered the child returned to the parents at that time. So we're talking about different stages of the dependency process and a different standard of review to hold the child detained. So I think the fact that the child was subsequently sent home and then the case dismissed is of no consequence as to whether there was probable cause for the protective custody warrant issue. Did your client, Ms. Suarez, ever interview the father before seeking this warrant? She did not, Your Honor. She did speak with the doctors who expressed concern and also the social worker who had investigated the prior referrals who had informed her that there was concerns about the father. And notably, one of the treating doctors here described the father as not even a verbal presence. He didn't ask a single question when his four-year-old son was about to undergo a life-threatening medical procedure. Another doctor, Dr. Frank, pointed out that after she called DFCS and made the report of child abuse, the mother found out about that it was Dr. Frank who called and reported her. The mother got angry, was yelling, using foul language, screaming at her, telling her, I'm going to sue you. The father was present at that appointment. Dr. Frank felt threatened and contacted security. And Dr. Frank reported to the investigating social worker that the father just left the building. So although the social worker did not speak directly with the father, she had information that the father's failure to act was placing the child at risk because he wasn't intervening. Let me ask you, the consul talked about the social worker not informing the parents about who had reported on them, what the person said, and what the response to that person was. Is there some kind of, I seem to recall vaguely from the past, is there some kind of problem in California about telling the parent who has phoned in a referral? Yes, under the Child Abuse Neglect Reporting Act, the individual who makes the referral, a mandated reporter in this case, a doctor, is entitled to confidentiality. Their identity cannot be, the social worker, as a matter of California law, can't go tell the parent here, you know, the doctor told me this and the doctor told me that. Now, obviously, this doctor testified at the subsequent underlying dependency proceeding, but at the time, the social worker is entitled to rely on the statutory protection of the mandated reporter, and that's in the penal code. As to, also, the, I'd like to address the concern about the hearsay statement, additionally, the Welfare and Institution Code, Section 355, actually allows social workers to introduce evidence of hearsay. Now, that is at the jurisdictional phase of the proceeding, but this statute actually allows social workers to rely on information from health practitioners, and that statute, combined with the instruction of the Liston case, that hearsay statements and warrant petitions are fine, and that what needs to be looked at is the reliability and veracity of the person providing the information. We don't have a confidential informant or an anonymous tip here. We have the child's treating pediatrician, who has no, it's not a disgruntled family member, as we had, you know, in one referral, a family member who basically said, I have concerns about this family, but you should know that I just got into an argument with them last weekend. Here we have the pediatrician and two specialists, two gastroenterologists, who are consistently reporting concerns that the mother's conduct is placing the child at risk, so they don't have an incentive to lie, to exaggerate, to make things up, and the social worker is entitled to rely on their reports and not to go talk with everyone that they've heard from, so that when Dr. Frank says, someone in my staff told me that the mother receives items donated, items, cash, computers, and other things, and then turns around and sells them on eBay, the social worker is entitled to rely on that hearsay because she is entitled to assume that the doctor isn't going to make this up whole cloth. Well, if that report was corroborated in her investigation, was it not? That's correct. She talked to a deputy sheriff from Santa Clara County who was actually investigating her for potential criminal fraud. That's correct. And she looked at the website to see what was on... That's correct, she did. She did, and my opponent would have her actually go, I'm not sure what he would have her go and do, but he seemed, there appears to be criticism of the double and triple layers of hearsay, but as Your Honor points out, the social worker did confirm these issues during her investigation. In terms of including exculpatory information in the warrant, I think Your Honor is correct that there is no case law that highlights that this is required. The standard, again, is did the social worker lie in order to get the warrant? Did she intentionally deceive the court or did she act with reckless disregard for the truth? And not including information about the child's intelligence and access to toys, those are not material omissions, although they may highlight some qualities and strengths of the family, as all families have. It wasn't pertinent to the concerns in this case, which are that the mother's behavior in taking the child to multiple doctors, exaggerating his symptoms or even lying about his symptoms in order to have additional medical procedures done, none of the alleged omissions would have negated probable cause for the warrant to issue. And I think that's all I have, Your Honors, unless there's any additional questions. I think not, Counsel. Thank you. In circumstances like these, I'm glad there's not a court reporter to glare at me. I'm going to proceed quickly. Starting from the beginning, there was no procedure being contemplated at all at the time this child was taken. You will find no evidence of that, none. There was no evidence of abuse at that time, nor was there evidence of abuse in any of the prior referrals. I thought that Dr. Franks told the social worker that Ms. Beltran was in the process of moving to Modesto and was switching doctors, and that they wanted Kobe to be weighed twice a week, and there was a question as to whether or not she had missed appointments or complied with the doctor's advice. Did I misread the record? Well, no, but that has nothing to do with the procedure. There was no procedures at all. Counsel, the concern goes beyond procedures. It's a question of whether or not the mother was taking care of the child. You've got the doctor saying we need to be monitoring the weight gain of this child on a regular basis, and part of the problem here is that there wasn't any evidence that she was doing that. But there wasn't any evidence because Suarez never went and talked to Mother, who actually had told her that she had missed a couple of appointments because they were selling their house, and she had called in the weights and kept the food log that Dr. Franks had asked her to keep. But none of that is said in the petition, Your Honor. It is a blind attempt to pull the wool over the court's eyes. May I complete a couple more of the thoughts in response? Sure, go ahead. In the trial court, juvenile court, they presented their entire case. The child was returned halfway through it because he had already sunk below the 5 percent BMI. Now, that's not stable. He was You bet. But that means she knew who the reporter was, and the statement to you that you can't tell the parent, a doctor told me this and a doctor told me that, and what do you have to say about that? It's absolutely false. Absolutely you can do that. You don't have to say that's the reporter. You just say, hey, here's what I've learned. The reference to Welfare Institution Code 355 applies solely to the juvenile setting and only to the jurisdiction proceeding to boot, and it allows you a chance to object and make them produce witnesses, something you don't get in an ex parte application for a warrant. I want to point out that Government Code 820.21 that governs in California immunity for social workers includes expressly in it that you are to include exculpatory information at the risk of losing your immunity. Now, if toys and the child's intelligence and how well he was cared for as noted in all of the prior referrals was not important, then why, and not material, then why was it not, why was it included in all of the notes of the prior referrals? Counsel, your time has expired. Thank you. Thank you very much. The case just argued is submitted.
judges: Hogan, Fernandez, Tallman